CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
LUISA TAMEZ (Bar No. 5434469)[1]
(E-Mail: Luisa_Tamez@fd.org)
Deputy Federal Public Defender
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368

Attorneys for Defendant
JEREMY TRAVIS PAYNE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. ED CR 22-00054-PA |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS** |
| v. | |
| JEREMY TRAVIS PAYNE, | |
| Defendant. | **Date: May 23, 2022** |
| | **Time: 3:00 p.m.** |
| | **Honorable Judge: Percy Anderson** |

PLEASE TAKE NOTICE THAT defendant, Jeremy Travis Payne ("Mr. Payne"), by and through his attorney of record, Deputy Federal Public Defender Luisa Tamez, hereby moves to suppress all evidence obtained by the government as a result of the California Highway Patrol's illegal search of Mr. Payne's cellphone on November 3, 2021.

///

///

---

[1] Luisa Tamez is a government attorney and a member of the New York State Bar. Ms. Tamez has been admitted to practice before the United States District Court for the Central District of California.

1       This motion is made pursuant to the Fourth and Fifth Amendment to the United

2   States Constitution and under Federal Rule of Criminal Procedure 12(b)(3)(C). It is based

3   on the attached memorandum of points and authorities and declaration, the files and

4   records in this case, and any additional evidence and argument that may be presented at

5   or before the hearing on this motion.

6                               Respectfully submitted,

7                               CUAUHTEMOC ORTEGA
                            Federal Public Defender

8

9   DATED:  April 25, 2022       By  */s/ LUISA TAMEZ*

10                              LUISA TAMEZ
                            Deputy Federal Public Defender

2

# **<u>TABLE OF CONTENTS</u>**

I. INTRODUCTION ............................................................................................ 1

II. STATEMENT OF FACTS .............................................................................. 1

III. ARGUMENT ................................................................................................. 3

    A.    The CHP searched Mr. Payne's cell phone in violation of the Fifth Amendment. .......................................................................... 3

        1.    The CHP compelled the use of Mr. Payne's biometric passcode...... 4

        2.    The information contained in Mr. Payne's phone was self-incriminating. ........................................................................ 6

        3.    Mr. Payne's cell phone passcode is a testimonial communication........................................................................ 6

    B.    The CHP violated Mr. Payen's Miranda rights. ......................................... 8

    C.    The CHP searched Mr. Payne's cell phone in violation of the Fourth Amendment ............................................................................ 9

    D.    The search of the house on El Cortez Way was based on the fruits of the illegal search of Mr. Payne's phone..................................... 10

    E.    The search of the house on El Cortez Way violated the Fourth Amendment. .......................................................................... 11

    F.    The warrant contained illegally-obtained evidence. ................................. 14

IV. CONCLUSION ............................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                   **PAGE(S)**

*California v. Beheler*,
    463 U.S. 1121 (1983) ................................................................ 9

*Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cty.*
    542 U.S. 177 (2004) ................................................................ 3

*In Re Application For A Search Warrant*,
    236 F. Supp. 3d 1066 (N.D. Ill. 2017) .................................... 7

*Kastigar v. United States*,
    406 U.S. 441 (1972) ................................................................ 6

*Kentucky v. King*,
    563 U.S. 452 (2011) .............................................................. 14

*Malloy v. Hogan*
    378 U.S. 1 (1964) .................................................................... 4

*Matter of Residence in Oakland, California*,
    354 F. Supp. 3d 1010 (N.D. Cal. 2019) .................................. 6

*Maryland v. Buie*,
    494 U.S. 325 (1990) .............................................................. 14

*Minnesota v. Murphy*
    465 U.S. 420 (1984) ................................................................ 4

*Miranda v. Arizona*,
    384 U.S. 436 (1966) .................................................1, 8, 9, 10

*Nardone v. United States*,
    308 U.S. 338 (1939) .............................................................. 11

*Riley v. California*,
    573 U.S. 373 (2014) .............................................................. 10

*Samson v. California*,
    547 U.S. 843 (2006) ................................................................ 9

*SEC Civil Action v. Huang*,
    2015 WL 5611644, at 1-4 (E.D. Pa. Sept. 23, 2015) ............ 7

1

## TABLE OF AUTHORITIES (Cont'd)

2

**CASES**                                                                **PAGE(S)**

3

*Sialoi v. City of San Diego,*
823 F.3d 1223 (9th Cir. 2016) ............................................... 14

4

5

*United States v. Anderson,*
    79 F.3d 1522 (9th Cir. 1996) .............................................. 4

6

7

*United States v. Bishop,*
    264 F.3d 919 (9th Cir. 2001) ............................................. 14

8

9

*United States v. Booker,*
    2021 WL 4244895, at 8 (S.D. Cal. Sept. 17, 2021) ................................. 4, 5

10

11

*United States v. Davenport,*
    752 F. App'x 476 (9th Cir. 2019) ......................................... 9

12

13

*United States v. Doe (In re Grand Jury Subpoena Duces Tecum)*
    670 F.3d 1335 (11th Cir. 2012) .......................................... 8

14

15

*United States v. Franklin,*
    603 F.3d 652 (9th Cir. 2010) ............................................ 11

16

17

*United States v. Grandberry,*
    730 F.3d 968 (9th Cir. 2013) ......................................11, 12, 13

18

19

*United States v. Grandstaff,*
    813 F.2d 1353 (9th Cir. 1987) ........................................... 14

20

21

*United States v. Howard,*
    447 F.3d 1257 (9th Cir. 2006) ........................................... 11

22

23

*United States v. Johnson,*
    875 F.3d 1265 (9th Cir. 2017) ........................................... 9

24

*United States v. Kirschner,*
    823 F. Supp. 2d 665 (E.D. Mich. Mar. 30, 2010) ........................... 7

25

26

*United States v. Maffei,*
    2019 WL 1864712, at 5 (N.D. Cal. Apr. 25, 2019) ........................... 6

27

28

## <u>TABLE OF AUTHORITIES (Cont'd)</u>

*United States v. Maffei,*
    2019 WL 1864712, at 6 (N.D. Cal. Apr. 25, 2019)......................................... 6, 7

*United States v. Mora-Alcaraz,*
    986 F.3d 1151 (9th Cir. 2021) ............................................................................ 9

*U.S. v. Saechao,*
    418 F.3d 1073 (9th Cir 2005) ......................................................................... 4, 5

*U.S. v. Sanchez,*
    334 F. Supp. 3d 1284 (N.D. Ga. 2018) ............................................................. 5

*United States v. Wanless,*
    882 F.2d 1459 (9th Cir. 1989)......................................................................... 14

*U.S. v. Washington,*
    431 U.S. 181 (1977) .......................................................................................... 4

**FEDERAL STATUTES**

U.S. Const, amdn V. ................................................................................................... 3

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

During a traffic stop on November 3, 2021, California Highway Patrol ("CHP") officers forced Mr. Payne to unlock his phone using his thumbprint passcode. Although Mr. Payne was on parole at the time of the search and subject to electronic device search conditions, his Fifth Amendment right to refuse to answer or incriminate himself was nevertheless intact. By forcibly unlocking his phone, the CHP compelled a testimonial, incriminating communication in violation of the Fifth Amendment. Mr. Payne was not read his *Miranda* rights before officers compelled his passcode. The officers then searched the phone in violation of the Fourth Amendment.

After unlawfully searching Mr. Payne's phone, a CHP officer drove to an address found on Mr. Payne's cell phone map application. Without probable cause that Mr. Payne resided at the address, the officer entered the residence, in violation of the Fourth Amendment. After illegally searching Mr. Payne's phone and illegally entering the residence, the CHP officers obtained a search warrant—not based on probable cause, but based on their illegal observations.

The search of Mr. Payne's cell phone violated the Fourth and Fifth Amendment and Mr. Payne's *Miranda* rights. The subsequent search of the address found on the phone was a fruit of the illegal cell phone search. Moreover, the search of the address independently violated the Fourth Amendment. Mr. Payne accordingly requests that the Court supress all evidence found on Mr. Payne's phone and found during the subsequent unlawful search of the residence.

### II. STATEMENT OF FACTS

On November 3, 2021, at approximately 11:45 a.m., uniformed CHP Officer Christian Coddington and Task Force Officer ("TFO") Garcia[2] stopped a gold Nissan driven by Mr. Payne for having "dark tint" on the front windows. *Ex. A, Officer Coddington Police Report ("Ex. A")*. The officers requested Mr. Payne's license,

---

[2] First name unknown.

registration and insurance, which he provided. *Id.* Mr. Payne truthfully told the officers that he was on parole. *Id.* The officers placed Mr. Payne in handcuffs and "detained him" while they conducted a parole compliance check. *Id.* The officers searched Mr. Payne and his vehicle and found no contraband or weapons. *Id.*

CHP Officer Coddington then asked Mr. Payne if he had a cell phone. *Id.* Mr. Payne told the officer where it was, but did not want to provide his passcode. *Id.*; *Ex. B, Declaration of Jeremy Travis Payne ("Ex. B")*. Officer Coddington claims that Mr. Payne then "reluctantly unlocked the cell phone using his right thumb print." *Ex. A.* Mr. Payne, however, affirms that the officer grabbed his hand and held his thumb to the screen. *Ex. B.* Officer Coddington's body worn camera was not activated during this interaction. However, in a later interaction captured on body worn camera footage, an officer ordered Mr. Payne to provide the alphanumeric code to his phone. The officer stated that he did not want to "keep pulling" Mr. Payne's finger. *Ex. C, CHP Body Worn Footage ("Ex. C")*. One of Mr. Payne's parole conditions states that he shall "surrender any digital/electronic device and provide a pass key/code to unlock the device to any law enforcement officer for inspection . . . Failure to comply can result in . . . arrest pending further investigation and/or confiscation of any device pending investigation." *Ex. D, Jeremy Travis Payne Parole Conditions ("Ex. D")*.

The officers then searched Mr. Payne's phone and viewed videos which "showed what appeared to be a large amount of US currency, several bags of blue pills . . . and a gold-colored money counting machine." *Ex. A.* In one of the videos, Mr. Payne "referred to the room with the money, narcotics, and counting machine as his 'office.'" *Id.*

Officer Coddington next searched Mr. Payne's cell phone map application "which revealed a pin drop to a parked vehicle at El Cortez Way in Palm Desert." *Id.* The officer asked Mr. Payne where he lived, and Mr. Payne informed him that he lived with his mother at a different address on Dr. Carreon Boulevard in Indio, California. *Id.* Mr. Payne's girlfriend was also in the vehicle and likewise confirmed that Mr. Payne

2

resided with his mother in Indio. *Id.* His girlfriend informed officers she had never seen Mr. Payne at a residence on El Cortez Way. *Id.*

Based on the search of the cell phone, Officer Coddington transported Mr. Payne and his girlfriend to the El Cortez Way address. *Id.* Before obtaining a warrant, Officer Coddington used a key from Mr. Payne's keyring to unlock the door. *Id* .Officer Coddington then entered the house and observed "several bags of blue pills" on a dresser and a gold money counting machine. *Id.* Officer Coddington stated that this initial search of the residence was a "safety sweep." *Id.* Prior to obtaining a warrant, the officers also walked a K-9 through the residence. *Id.* Based on the search of the phone and initial search of the residence, Officer Coddington authored a search warrant which was signed by a Riverside County Superior Court Judge. *Id.; Ex. E, Search Warrant ("Ex. E").* The officers then entered the home again and located narcotics and currency. *Ex. A.* Mr. Payne was read his *Miranda* rights at approximately 17:30 hours, after the search of the cell phone and residence. *Id.*

Based on the search of the residence, on February 23, 2022, Mr. Payne was charged in a two count indictment with violating 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi) and (b)(1)(C) for allegedly possessing with intent to distribute fentanyl and an analogue of fentanyl. Dkt. 1. Trial in this matter is scheduled on June 14, 2022.

## III. ARGUMENT

### A.   The CHP searched Mr. Payne's cell phone in violation of the Fifth Amendment.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled.  *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cty*., 542 U.S. 177, 189, (2004).

**1.     The CHP compelled the use of Mr. Payne's biometric passcode.**

In order to determine whether testimony has been "compelled," courts look to "whether, considering the totality of the circumstances, the free will of the witness was overborne." *See United States v. Anderson*, 79 F.3d 1522, 1526 (9th Cir. 1996) (quoting *United States v. Washington*, 431 U.S. 181, 188 (1977)). To determine whether an individual was compelled, courts consider if the admission was free and voluntary. *United States v. Booker*, No. 3:18-CR-02611-GPC, 2021 WL 4244895, at *8 (S.D. Cal. Sept. 17, 2021). An admission may not be "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Id.* (quoting *Malloy v. Hogan*, 378 U.S. 1, 7 (1964)).

In the probationary context, "although the state is permitted to require a probationer to appear and discuss matters affecting his probationary status, the probationer may not be required under threat of revocation of probation to respond to questions put to [him], however relevant to his probationary status, [that] call for answers that would incriminate him in a pending or later criminal proceeding." *United States v. Saechao*, 418 F.3d 1073, 1077 (9th Cir. 2005) (quoting *Minnesota v. Murphy,* 465 U.S. 420, 435 (1984) (internal quotations omitted).

The use of Mr. Payne's thumbprint to unlock his phone was not free and voluntary. TFO Garcia "placed Payne in handcuffs and detained him while TFO Henderson . . . conducted a parole compliance check." *Ex. A*. When asked about his cell phone, Mr. Payne told the officers it "was in the driver's door panel and was green in color." *Id.* However, Mr. Payne refused to provide the passcode. *Id.* Although the officers claim that Mr. Payne "reluctantly unlocked the cell phone using his right thumb print," Mr. Payne affirms that the officers forcibly grabbed his thumb and pressed it to the phone. *Ex. A; B.* There is no body worn footage of this incident. However, in later body worn footage, one of the officers ordered Mr. Payne to provide his password, stating "I don't want to have to keep pulling your finger." *Ex. C.*

4

By "pulling" Mr. Payne's thumb and unlocking his phone, CHP officers extracted information on the phone by force and exertion of improper influence. Although Mr. Payne's parole conditions state that he shall surrender any digital or electronic device and provide a passcode, the parole terms do not permit officers to compel or force this information from Mr. Payne. *Ex. D.* Rather, the conditions state that failure to comply could result in "arrest pending further investigation" or confiscation of the device pending investigation. *Ex. D.*

Even if the CHP officers had not forced Mr. Payne's thumbprint, it was nevertheless improper for the parole officer to tell Mr. Payne that he was required to give them his passcode while he was in handcuffs in a patrol vehicle. The Ninth Circuit in *Saechao* noted that probationary conditions which do not "impose any affirmative obligation" and let individuals "decline to answer particular questions" are permissible. 418 F. 3d. at 1078. However, compelling an individual to answer a question by threat of penalty is impermissible. *Id.* The Ninth Circuit concluded that "[t]he Fifth Amendment proscribes the use in a separate criminal proceeding of a statement obtained pursuant to a probation condition that requires a probationer to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." *Id.* at 1081. *See also Booker*, No. 3:18-CR-02611-GPC, 2021 WL 4244895, at *8 (S.D. Cal. Sept. 17, 2021) (finding Fifth Amendment violation where individual was instructed to enter a cell phone passcode within the agent's line of sight); *United States v. Sanchez*, 334 F.Supp.3d 1284, 1297 (N.D. Ga. 2018) (finding Fifth Amendment violation where the defendant's parole officer told him that his refusal to provide the passcodes to his iPhones could result in his arrest for a parole violation).

Mr. Payne was thus compelled to provide the passcode to his phone in violation of the Fifth Amendment.

**2.      The information contained in Mr. Payne's phone was self-incriminating.**

The information CHP obtained from Mr. Payne's cell phone qualifies as self-incriminating. The Fifth Amendment "protects against any disclosures which a witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *United States v. Maffei*, No. 18-CR-00174-YGR-1, 2019 WL 1864712, at *5 (N.D. Cal. Apr. 25, 2019) (quoting *Kastigar v. United States*, 406 U.S. 441, 445 (1972)). An individual's "provision of the passcode to her cell phone so qualifies as information on the phone may be incriminating." *Id.*

Here, the CHP unlocked Mr. Payne's phone by grabbing Mr. Payne's thumb and pressing it to his phone. The CHP then searched the phone and found a video containing "several bags of blue pills." *Ex. A.* The CHP likewise opened a map application on the phone, leading them to an address which the CHP searched. *Id.* The search of Mr. Payne's phone and the address found in the phone led to the instant prosecution. The search was therefore self-incriminating.

**3.      Mr. Payne's cell phone passcode is a testimonial communication.**

While "neither the Supreme Court nor the Ninth Circuit" have addressed the issue, courts have found that the use of a biometric feature to unlock an electronic device is a testimonial communication under the Fifth Amendment. *Matter of Residence in Oakland, California,* 354 F. Supp. 3d 1010, 1015 (N.D. Cal. 2019)*; United States v. Maffei*, No. 18-CR-00174-YGR-1, 2019 WL 1864712, at *6 (N.D. Cal. Apr. 25, 2019).

In *Matter of Residence in Oakland*, the Northern District of California found that "if a person cannot be compelled to provide a passcode because it is a testimonial communication, a person cannot be compelled to provide one's finger, thumb, iris, face, or other biometric feature to unlock that same device." 354 F. Supp. 3d 1010, 1015–16. Specifically, the court rejected the argument that the use of a biometric passcode was akin to fingerprinting, which is not protected under the Fifth Amendment. *Id.* The Court first explained that unlike basic fingerprinting, "biometric features serve the same

6

purpose of a passcode, which is to secure the owner's content." *Id.* at 1015. Second, the court found:

> requiring someone to affix their finger or thumb to a digital device is fundamentally different than requiring a suspect to submit to fingerprinting. A finger or thumb scan used to unlock a device indicates that the device belongs to a particular individual. In other words, the act concedes that the phone was in the possession and control of the suspect, and authenticates ownership or access to the phone and all of its digital contents. Thus, the act of unlocking a phone with a finger or thumb scan far exceeds the physical evidence created when a suspect submits to fingerprinting to merely compare his fingerprints to existing physical evidence (another fingerprint) found at a crime scene, because there is no comparison or witness corroboration required to confirm a positive match. Instead, a successful finger or thumb scan confirms ownership or control of the device, and, unlike fingerprints, the authentication of its contents cannot be reasonably refuted.

*Id.* at 1016 (internal quotations omitted).

Similarly in *In re Application for a Search Warrant*, 236 F. Supp. 3d 1066, 1073 (N.D. Ill. 2017), the Northern District of Illinois found that "[b]y using a finger to unlock a phone's contents, a suspect is *producing* the contents on the phone." Unlike fingerprinting, the biometric feature of a phone creates a scenario in which "a suspect is testifying that he or she has accessed the phone before, at a minimum, to set up the fingerprint password capabilities, and that he or she currently has some level of control over or relatively significant connection to the phone and its contents." *Id.*

Multiple other district courts have likewise found that requiring an individual to divulge a cell phone passcode constitutes a testimonial communication under the Fifth Amendment. *See United States v. Maffei*, No. 18-CR-00174-YGR-1, 2019 WL 1864712, at *6 (N.D. Cal. Apr. 25, 2019); *SEC Civil Action v. Huang*, No. 15-269, 2015 WL 5611644, at *1-4, 2015 (E.D. Pa. Sept. 23, 2015) (defendants could invoke their Fifth Amendment right against self-incrimination to challenge production of their smartphone passcodes because production of passcodes was testimonial in nature); *United States v. Kirschner*, 823 F.Supp.2d 665, 669 (E.D. Mich. Mar. 30, 2010) (quashing subpoena for

testimony about computer password on Fifth Amendment grounds because the government sought to require the defendant "to divulge through his mental processes his password – that will be used to incriminate him."); *United States v. Doe (In re Grand Jury Subpoena Duces Tecum)*, 670 F.3d 1335, 1341 (11th Cir. 2012) (holding that "decryption and production of the contents of the hard drives would sufficiently implicate the Fifth Amendment privilege" because the "decryption and production would be tantamount to testimony by Doe of his knowledge of the existence and location of potentially incriminating files; of his possession, control, and access to the encrypted portions of the drives; and of his capability to decrypt the files").

Here too, when CHP officers forced Mr. Payne to unlock his phone with his thumb, they compelled a testimonial communication in violation of the Fifth Amendment.

Accordingly, all evidence obtained as a result of the cell phone search, including evidence found at the residence on El Cortez way, must be suppressed.

**B.    The CHP violated Mr. Payne's Miranda rights.**

At approximately 11:45 a.m., CHP officers stopped Mr. Payne. *Ex. A.* After confirming Mr. Payne's parole status, TFO Garcia "placed [Mr.] Payne in handcuffs and detained him . . ." *Ex. A.* Mr. Payne was placed in the back of a patrol vehicle. *Id.* Without administering *Miranda* warnings, CHP officers located Mr. Payne's phone and asked for his passcode. *Id.* When Mr. Payne did not provide it, a CHP officer grabbed his thumb and forcibly unlocked it. *Ex. B.* While Mr. Payne was still in handcuffs and in a patrol vehicle, a CHP officer asked Mr. Payne to provide his alphanumeric passcode because he did not want to keep "pulling" Mr. Payne's finger. *Ex. C.* The officers did not administer *Miranda* warnings until approximately 17:30 hours. *Ex. A.*

*Miranda*'s protections apply to statements made by a defendant during custodial interrogation. *Miranda v Arizona*, 384 U.S. 436, 444 (1966). In determining whether an individual is in custody, the court makes two distinct but related inquiries. First, the court asks "whether a person in [defendant's] position would have felt, under a totality of the

8

circumstances, that [he was] not at liberty to terminate the interrogation and leave." *United States v. Mora-Alcaraz*, 986 F.3d 1151, 1155 (9th Cir. 2021) (internal quotations omitted). If so, the court then asks whether a reasonable person in a defendant's position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983).

Here, Mr. Payne was in handcuffs and in a patrol vehicle when he was asked for his cell phone passcode. He was not free to leave and was compelled to provide the passcode. This interrogation violated Mr. Payne's *Miranda* rights. The fruits of the cell phone search accordingly must be suppressed.

## C.   The CHP searched Mr. Payne's cell phone in violation of the Fourth Amendment

"Restrictions on a parolee's liberty are not unqualified . . . and parolees still enjoy limited Fourth Amendment rights."  *United States v. Johnson*, 875 F.3d 1265, 1274 (9th Cir. 2017) (quoting *Samson v. California*, 547 U.S. 843, 850 n.2 (2006) (internal quotations omitted)).  The ultimate touchstone of the Fourth Amendment is reasonableness. *Id.* at 1273. "Determining the reasonableness of a particular search involves balancing on the one hand, the degree to which the search intrudes upon an individual's privacy, and on the other, the degree to which the search is needed for the promotion of legitimate governmental interests." *Id.* California law enforcement officers may conduct warrantless searches of individuals on parole so long as the searches are not "arbitrary, capricious, or harassing," *United States v. Davenport*, 752 F. App'x 476, 479 (9th Cir. 2019) (citing *Samson*, 547 U.S. at 856).

In *Johnson*, the Ninth Circuit found that a search of a parolee's cell phone was not arbitrary, capricious or harassing because at the time of the cell phone search, "officers knew Johnson had a violent criminal history, and had reason to believe his cell phone contained evidence of serious parole violations, including possession and use of a firearm in a residential burglary."  875 F.3d at 1275 (9th Cir. 2017). The individual in that case

had likewise given officers access to his cell phone and asked them to review his call logs and text messages. *Id.* at 1227.

On the contrary, the search of Mr. Payne's cell phone was arbitrary, capricious and harassing. The CHP stopped Mr. Payne based on their observation of a "dark tint" on the front windows of his vehicle. *Ex. A.* Mr. Payne complied with officer's orders to pull over and told them that he was on parole. *Id.* The officers searched Mr. Payne's person and his vehicle and found no weapons or contraband. *Id.* At the time of the search of Mr. Payne's cell phone, the CHP at most had observed a vehicle code infraction. Rather than conducting additional investigation when Mr. Payne refused to provide his passcode, the officers grabbed Mr. Payne's thumb and unlocked his phone. *Ex. B.* The officers then went on a fishing expedition on the phone, delving into the contents of Mr. Payne's photographs, videos and map application. *See Riley v. California*, 573 U.S. 373, 395 (2014) (noting that prior to cell phones, it would be "implausible" for an individual to have "strolled around with video tapes, photo albums, and an address book all crammed into his pockets" and finding that allowing a search of a phone for those items would be "a significant diminution of privacy.").

Although Mr. Payne was on parole and therefore had limited Fourth Amendment rights, the promotion of legitimate governmental interests in this scenario did not outweigh Mr. Payne's privacy interest in his cell phone. The CHP searched Mr. Payne's phone in violation of the Fourth Amendment.

**D.   The search of the house on El Cortez Way was based on the fruits of the illegal search of Mr. Payne's phone.**

The search of Mr. Payne's cell phone violated the Fourth and Fifth Amendment and Mr. Payne's *Miranda* rights. During this illegal search, CHP officers opened Mr. Payne's cellphone map application a located a "pin drop to a parked vehicle" on El Cortez Way. *Ex. A.* The officers then drove to the residence and searched the residence. *Id.* The officers would not have searched the residence on El Cortez Way had they not

10

conducted an illegal search of Mr. Payne's phone. The evidence found at the residence on El Cortez Way accordingly is a fruit of the illegal cell phone search and must be suppressed. *Nardone v. United States,* 308 U.S. 338, 341 (1939) (The exclusionary rule, which bars the admission of evidence obtained in violation of the Constitution, extends beyond the direct products of government misconduct to evidence derived from the illegal conduct, or "fruit of the poisonous tree." ).

**E.     The search of the house on El Cortez Way violated the Fourth Amendment.**

The search of the house on El Cortez Way was not only a fruit of the illegal search of Mr. Payne's phone, but also independently violated the Fourth Amendment. CHP officers did not have probable cause to believe Mr. Payne lived at that residence.

Law enforcement officers must "have probable cause to conclude that a parolee lives at an address before carrying out a warrantless search pursuant to a parole search condition." *United States v. Grandberry*, 730 F.3d 968, 970 (9th Cir. 2013). The Ninth Circuit applies a "relatively stringent standard" in determining what constitutes probable cause that a residence belongs to a person on parole. *Id.* (citing *United States v. Howard*, 447 F.3d 1257, 1262 (9th Cir. 2006) (overruled on other grounds)). It is insufficient to show a person on parole may have spent the night there occasionally or that law enforcement merely observed the individual at the residence to be searched. *Id; United States v. Franklin*, 603 F.3d 652, 657 (9th Cir. 2010) ("That a house or apartment belonging to someone else is also the 'residence' of a probationer is not an inference that can be drawn simply because the probationer happens to be seen there."). "There must be strong evidence that a parolee resides at the address." *Grandberry*, 730 F. 3d at 975.

In *Grandberry*, the Ninth Circuit affirmed a district court's grant of a motion to suppress, finding that law enforcement lacked probable cause to believe a parolee resided at a searched residence. In that case, law enforcement surveilled the residence at issue on numerous occasions before searching it.  *Id.* at 971. The officers likewise saw the parolee "enter the building using 'keys he held' at least six times, and perhaps ten." *Id.* The

11

officers further drove to the address which the parolee had reported to his parole officer and conducted surveillance there for "an hour or two." *Id.*

The Ninth Circuit found, however, that the officers observations, considered in their totality, were insufficient. First, the Ninth Circuit found that the parolee did not admit he lived at the residence. *Id.* at 977. Second, the Ninth Circuit found that the surveillance of the parolees reported residence was "very peripheral." *Id.* The Ninth Circuit emphasized:

> In more than thirty years of assessing whether officers had probable cause to believe that a parolee or probationer lived at a searched residence, we have never found probable cause where, as here, the parolee officially and consistently reported a residential address other than the one searched, unless there was an affirmative and substantial basis for concluding that he did not actually live there.

*Id.* The officers made no attempt to determine who lived at the reported address, interview neighbors, determine if the parole officer had conducted home visits or conducted surveillance in the early morning or evening hours. *Id.* at 977-78.

Further, despite surveilling the searched residence, the officers in *Grandberry* failed to determine whether the parolee lived there. *Id.* at 978. The Ninth Circuit explained that the officers did not review names on the building's mailboxes to see if the parolee received mail there and did not observe him carrying groceries, laundry, newspapers, or mail. *Id.* at 972. They likewise did not speak to any neighbors or investigate who leased or lived in the searched apartment. *Id.* at 971–72. The Ninth Circuit concluded that the individual's key access, without more, would not lead a reasonably prudent person to believe he lived there. *Id.* Rather, the key access could be consistent with the apartment's use as the location of a drug business. *Id.* at 980.

Here, the CHP took minimal steps—far less than those which were insufficient in *Grandberry*—to determine whether Mr. Payne lived at the El Cortez Way residence. First, the CHP conducted absolutely no surveillance of El Cortez Way. Prior to the search, the officers never personally observed Mr. Payne at the residence, much less had

12

reason to believe he lived there. Instead, they based the search on a "pin drop to a parked vehicle" at the address. *Ex. A*. This pin drop did not even show that the vehicle parked there belonged to Mr. Payne. *Id.* The officers did not determine that the vehicle was registered to Mr. Payne until *after* entering the residence. *Id.* And the fact that a vehicle registered to Mr. Payne was outside the residence at most shows that he may previously have happened to be at the address. It does not constitute probable cause that Mr. Payne lived there.

The CHP further based their search of the residence on videos from Mr. Payne's phone which they claimed "showed the view of El Cortez Way." *Id.* However, nothing in the videos show a specific address or street name. The CHP likewise went to the residence because Mr. Payne referred to a room with money, narcotics, and a counting machine as his "office" in a video. *Id.* Like in *Grandberry*, while this could be indicative of use of the apartment as a base to conduct a drug business, it does not suggest the apartment was Mr. Payne's residence. 730 F.3d at 979. Mr. Payne's key access to the apartment likewise does not establish probable cause that Mr. Payne lived at the searched address.

Further, the CHP took no steps to verify Mr. Payne's address. Both he and his girlfriend informed the officers that he lived with his mother on Dr. Carreon Boulevard in Indio. His girlfriend had in fact never heard of the residence on El Cortez Way and had only every visited Mr. Payne at his mother's home. *Ex. A*. The title to Mr. Payne's vehicle and other documents found in the residence on El Cortez Way in fact list the address in Indio as Mr. Payne's address. *Ex. F, Jeremy Travis Payne Vehicle Title.* The officers took no steps to contact Mr. Payne's mother or determine where he resided. There was no "affirmative and substantial basis for concluding" that Mr. Payne did not actually live at the address he provided. *Grandberry*, 730 F. 3d at 977. The search of the residence on El Cortez Way therefore violated the Fourth Amendment.

The CHP's claim of entering the house to conduct a security sweep does not change this result. A warrantless "protective sweep" of a residence is permitted where,

"as an incident to arrest," law enforcement "possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). Mr. Payne was not arrested at the residence nor was there any articulable facts indicating there may be other individuals posing a danger in the residence. *Ex. A.* Moreover, *Buie* "offers no independent justification for entry of a residence, but only addresses the question of what the police may do once lawfully inside." *Sialoi v. City of San Diego*, 823 F.3d 1223, 1237 (9th Cir. 2016). As discussed above, the CHP had no lawful basis to enter the house.

## F. The warrant contained illegally-obtained evidence.

Although the CHP obtained a search warrant for the residence on El Cortez way, the warrant was based on illegally obtained evidence, not probable cause. *Ex. E.* The government cannot insulate an illegal warrantless search by including the product of that search in a warrant affidavit. *U.S. v. Grandstaff*, 813 F.2d 1353, 1355 (9th Cir. 1987); *U.S. v. Wanless*, 882 F.2d 1459, 1466- 67 (9th Cir. 1989).

A "warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011). Where a search warrant includes illegally obtained information, the affidavit must be "purged" of the offending facts. *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001). A court must then determine "whether the remaining facts still afforded a substantial basis for concluding that the search warrant was supported by probable cause." *Id.*

Here, the CHP went to the residence based on the illegal search of Mr. Payne's phone. The CHP further lacked probable cause that the residence belonged to Mr. Payne. The officers nevertheless entered the residence with a K-9 unit and observed contraband. The search warrant is entirely based on these illegal observations. The warrant therefore was not supported by probable cause. Accordingly, all evidence obtained from the search of the residence on El Cortez Way must be suppressed.

## IV. CONCLUSION

The CHP searched Mr. Payne's phone in violation of the Fourth and Fifth Amendment and Mr. Payne's *Miranda* rights. The CHP searched the residence on El Cortez Way based on the illegal cell phone search and in violation of the Fourth Amendment. The Court should grant the motion to suppress all evidence obtained as a result of the unconstitutional search.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  April 25, 2022               By   */s/ LUISA TAMEZ*

LUISA TAMEZ
Deputy Federal Public Defender