TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office
STEPHEN T. MERRILL (Cal. Bar No. 255827)
Special Assistant United States Attorney
Riverside Branch Office
       3403 10th Street, Suite 200
       Riverside, California 92501
       Telephone: (951) 276-6144
       Facsimile: (213) 276-6202
       E-mail:    Stephen.Merrill@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ED CR No. 22-00054-PA |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS; DECLARATION OF CHRISTIAN CODDINGTON |
| v. | |
| JEREMY TRAVIS PAYNE, | Hearing Date: May 23, 2022 |
| Defendant. | Hearing Time: 3:00 p.m. |
| | Location:    Courtroom of the Hon. Percy Anderson |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Special Assistant United States Attorney Stephen T. Merrill, hereby files its Opposition to Defendant's Motion to Suppress.

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, the attached

///

1

declaration, and such further evidence and argument as the Court may permit.

Dated: May 9, 2022                    Respectfully submitted,

                                      TRACY L. WILKISON
                                      Acting United States Attorney

                                      SCOTT M. GARRINGER
                                      Assistant United States Attorney
                                      Chief, Criminal Division

                                      JERRY C. YANG
                                      Assistant United States Attorney
                                      Chief, Riverside Branch Office


                                      STEPHEN T. MERRILL
                                      Special Assistant U.S. Attorney

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

TABLE OF AUTHORITIES..................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.     INTRODUCTION..................................................1

II.    STATEMENT OF FACTS............................................2

III.   ARGUMENT.....................................................4

       A.    Officer Coddington's Search of Defendant's Cellphone
             did not Violate the Fourth Amendment.....................4

       B.    Officer Coddington's Search of Defendant's Cellphone
             did not Violate the Fifth Amendment......................7

       C.    Defendant has not Established Standing to Challenge
             the Search of the Residence on El Cortez Way.............9

       D.    Even if Defendant has Standing to Challenge the Search
             of the Residence on El Cortez Way, the Officer's
             Search did not Violate the Fourth Amendment.............10

             1.   The Search Warrant Was Supported by Probable
                  Cause.............................................11

             2.   The Officers Were Justified in Sweeping or
                  Freezing the Premises to Secure it Pending the
                  Search Warrant....................................12

             3.   The Search Was also Justified Under Defendant's
                  Agreed Upon Parole Terms..........................13

       E.    Even if the Entry and Sweep of the Residence Was not
             Justified by a Valid Exception to the Warrant
             Requirement, the Warrant is Still Supported by
             Probable Cause.........................................14

       F.    Even if the Search Warrant Lacked Probable Cause, the
             Officers Relied on it in Good Faith.....................15

       G.    Even if Officer Henson's Questioning of Defendant Was
             in Violation of Miranda, the Evidence Derived from
             Defendant's Statement is not Fruit of the Poisonous
             Tree...................................................17

IV.    CONCLUSION...................................................18

i

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

Beaty v. Schriro,
    509 F.3d 994 (9th Cir. 2007) ......................................... 18

Dixon v. Wallowa County,
    336 F.3d 1013 (9th Cir. 2003) ........................................ 13

Franks v. Delaware,
    438 U.S. 154 (1978) .................................................. 11

Gilbert v. California,
    388 U.S. 263 (1967) ................................................... 8

Doe v. United States,
    487 U.S. 201 (1988) ................................................ 7, 9

Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County,
    542 U.S. 177 at (2004) ................................................ 7

Hill v. California,
    401 U.S. 797 (1971) .................................................. 11

Holt v. United States,
    218 U.S. 245 (1910) ................................................... 8

Illinois v. Gates,
    462 U.S. 213 (1983) .................................................. 11

Illinois v. Krull,
    480 U.S. 340 (1987) .................................................. 17

Illinois v. McArthur,
    531 U.S. 326-32 (2001) ............................................... 13

In re Search Warrant Application for [Redacted Text],
    279 F.Supp.3d 800 (N.D. Ill. 2017) ................................... 9

Kentucky v. King,
    563 U.S. 452 (2011) .................................................. 10

Rawlings v. Kentucky,
    448 U.S. 98 (1980) ................................................... 13

Schmerber v. California,
    384 U.S. 757 (1966) ................................................... 8

Segura v. United States,
    468 U.S. 796 (1984) .............................................. 12, 15

Samson v. California,
    547 U.S. 843 (2006) .............................................. passim

ii

**TABLE OF AUTHORITIES – (continued)**

United States v. Alaimalo,
   313 F.3d 1188 (9th Cir. 2002) ........................................ 13

United States v. Crews,
   502 F.3d 1130 (9th Cir. 2007) ........................................ 16

United States v. Dionisio,
   410 U.S. 1 (1973) .................................................... 8

United States v. Gonzalez-Sandoval,
   894 F.2d 1043 (9th Cir. 1990) ........................................ 18

United States v. Gourde,
   440 F.3d 1065 (9th Cir. 2006) ........................................ 11

United States v. Hopkins,
   830 Fed. Appx. 220 (9th Cir. 2020) ................................... 14

United States v. Hubbell,
   530 U.S. 27 (2000) ................................................... 7

United States v. Johnson,
   913 F.3d 793 (9th Cir. 2019) ......................................... 17

United States v. Leon Guerrero,
   847 F.2d 1363 (9th Cir. 1988) ........................................ 18

United States v. Leon,
   468 U.S. 897 (1984) .................................................. 16

United States v. Lindsey,
   877 F.2d 777 (9th Cir. 1989) ......................................... 12

United States v. Merriweather,
   777 F.2d 503 (9th Cir. 1985) ......................................... 15

United States v. Nora,
   765 F.3d 1049 (9th Cir. 2014) ........................................ 15

United States v. Padilla,
   508 U.S. 77 (1993) ................................................... 10

United States v. Patane,
   542 U.S. 630 (2004) .................................................. 18

United States v. Ross,
   456 U.S. 798 (1982) .................................................. 16

United States v. Salvucci,
   448 U.S. 83 (1980) ................................................. 9-10

United States v. Snipe,
   515 F.3d 947 (9th Cir. 2008) ......................................... 13

iii

**TABLE OF AUTHORITIES – (continued)**

United States v. Valentino Johnson,
    875 F.3d 1265 (9th Cir. 2017) ........................................ 5

United States v. Wade,
    388 U.S. 218 (1967) ............................................... 8

Matter of the Search of a Residence in Oakland, California,
    2019 WL 176937 (N.D. Cal. 2019) ...................................... 9

Matter of Search of [Redacted] Washington,
    2018 WL 3155596 (D.D.C. 2018) ........................................ 9

**STATE CASES**

Minnesota v. Diamond,
    905 N.W.2d 870 (Minn. 2018) ......................................... 9

People v. Downey,
    198 Cal. App. 4th 652 (2011) ...................................... 17

Virginia v. Baust,
    89 Va. Cir. 267, 2014 WL 10355635 (Va. Cir. Ct. Oct. 28, 2014) ....... 9


**STATE STATUTES**

California Penal Code § 3067 ........................................ 5, 8

California Vehicle Code section 26708 ................................. 2

**OTHER**

Rule 12-1.1 ........................................................ 10

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Defendant Jeremy Travis Payne ("defendant") is charged with possession of fentanyl, fluorofentanyl, and cocaine with intent to distribute.  Underlying the charges against defendant are his possession of the drugs listed above, over $13,000 in cash, and a gold-colored money counter all found during the search of a residence following the execution of a search warrant.  The facts supporting the warrant were discovered when defendant, a California parolee, was stopped for a vehicle violation and the officer conducted a valid parole search of his cellphone.

Defendant has moved to suppress those items and other evidence found at the residence, arguing that the officer's reliance on a duly issued search warrant cannot justify the search.  In particular, defendant argues that the parole search of defendant's cellphone violated the Fourth and Fifth Amendment (Defendant's Motion to Suppress ("Def. Mtn." pp 3-8; 9-10.), defendant's Miranda rights were violated (Def. Mtn. pp 8-9.), and the search of the residence violated the Fourth Amendment.  (Def. Mtn. pp 10-14.)

Defendant's motion should be denied.  The initial parole search of defendant and his cellphone was lawful and reasonable considering defendant's status as a parolee subject to search with or without cause.  Further, defendant's use of his fingerprint to open his phone was not a testimonial statement under the Fifth Amendment.  And finally, the evidence in this case was seized during the execution of a valid search warrant supported by sufficient probable cause

1

developed during the parole search of defendant's person and cellphone.

**II.    STATEMENT OF FACTS**

On November 3, 2021, California Highway Patrol ("CHP") Officer Christian Coddington, a member of the Coachella Valley Violent Crime Gang Task Force, and his partner, CHP Officer Garcia, observed defendant driving a vehicle with excessive tint in violation of California Vehicle Code section 26708, in Desert Hot Springs, California.  (Exhibit A to Defendant's Motion to Suppress, p.2.)  He conducted a traffic stop and contacted defendant.  (Id.)  Officer Coddington observed defendant "appeared extremely nervous," "was trembling as he fumbled for documents," "was sweating profusely," and was "stammering when he spoke."  (Id.)  When asked if he was on probation or parole, defendant said he was on parole for "assault with a deadly weapon."  (Id.)  Officer Coddington confirmed defendant was on parole with his dispatch.  (Id.)  Defendant was ordered out of the vehicle and was detained in handcuffs while Officer's conducted a parole search of defendant's person and vehicle.  (Id.)

Officer Coddington found $1,270 in defendant's right front pocket.  (Id.)  Officer Garcia located a keyring in defendant's pocket with several house keys and a BMW key.  (Id.)

After searching the vehicle, Officer Coddington, aware defendant's agreed upon parole terms required defendant submit to a search of his cellphone, asked defendant if he had a cellphone.  (Id.)  Defendant replied that he did, that it was in the driver's side door panel, and that it was green in color.  (Id.)  Officer Coddington retrieved the phone defendant described from the vehicle, and asked defendant to provide the password.  (Id.)  Defendant

2

immediately said the phone was not his and that he did not have the password. (Id.) Officer Coddington reminded defendant his agreed upon parole terms allowed a law enforcement officer to a search his cellphone and required defendant to provide the password. (Declaration of Cody Coddington ("Coddington Decl.") ¶ 9.) Defendant then unlocked his cellphone with his right thumb print. (Coddington Decl. ¶ 10.)

Officer Coddington reviewed the images and videos stored on defendant's cellphone. (Exhibit A to Defendant's Motion to suppress, p.2.) He observed a video created on November 3, 2021, at approximately 8:27 a.m. (Id.) In the video he saw a room with what appeared to be a large amount of cash, several bags of blue pills (that he suspected to be fentanyl), and a gold-colored money counting machine inside. (Id.) In the next video he saw defendant at a residence on El Cortez Way in Desert Hot Springs. (Id.) The same room depicted in the first video was depicted in the second video. (Id.) Defendant referred to the room as his office. (Id.) He states "life is good in Palm Desert," and "I got the Beamer out front." (Id.) Officer Coddington also located in a map application a pin drop to a parked vehicle parked in front of the residence on El Cortez Way. (Id.)

Officer Coddington transported defendant to the residence on Cortez Way. (Id. at p.3.) Officer Coddington used one of the keys from the key ring to open the front door. (Id.) He and assisting officers conducted a "security sweep of the residence" to ensure "no other persons were inside" the residence. (Id.) During the security sweep, Officer Coddington observed the room depicted in the video, along with the bags of blue pills, and the gold-colored money

3

counting machine.  (Id.)  Officer Coddington used the BMW key to unlock the BMW parked in front of the residence.  (Id.)  He also discovered the BMW was registered to defendant.  (Id.)

After completing the security sweep, Officer Coddington authored a search warrant for the residence on El Cortez Way.  (Id.)  He asked Officer Henson to contact defendant, who was handcuffed in a police vehicle parked near the residence on El Cortez Way, and obtain access to defendant's cellphone.  (Coddington Decl. ¶¶ 16-19.)  Officer Henson contacted defendant, asked "what's your password," and told defendant "I don't want to have to keep playing with your finger." (Exhibit C to Defendant's Motion to suppress.)  Defendant responded, "yeah, well you guys fuckin with me a whole lot, you know."  Officer Henson again asked, "What's your password" and defendant responded with the password to his phone. (Id.)

Officer Coddington then obtained a search warrant for the residence on El Cortez Way. (Exhibit A to Defendant's Motion to Suppress.)  Inside the room observed in defendant's cellphone videos, officers found a gold-colored money counter, a digital scale, multiple cellphones, 8 baggies with blue pills, a bag of white powder, money bag serial numbers, blue pills strew around the room, and $13,992 in cash.

**III. ARGUMENT**

   **A.   Officer Coddington's Search of Defendant's Cellphone did not Violate the Fourth Amendment**

Courts "'examin[e] the totality of circumstances' to determine whether a search is reasonable within the meaning of the Fourth Amendment."  Samson v. California, 547 U.S. 843, 848 (2006) (quoting United States v. Knights, 534 U.S. 112, 118 (2001)).  Whether a

search is reasonable "'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" Id. (quoting Knights, 534 U.S. at 118-19).  Applying this standard in a case involving a California parolee, the Supreme Court held that the Fourth Amendment does not prohibit police from conducting suspicionless searches of parolees where it has been authorized by state law.  Id. at 857.  California state law makes such an authorization and requires every prisoner eligible for release on state parole to "agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." California Penal Code § 3067(a).

Citing Samson, the Ninth Circuit Court of Appeals has found that a suspicionless search of a parolee's cellphone does not violate the Fourth Amendment.  United States v. Valentino Johnson, 875 F.3d 1265 (9th Cir. 2017).  The court found that "because Johnson was a parolee, subject to CPC § 3067(b)(3), and under the Fourth Amendment had a reduced expectation of privacy. . . the search of Johnson's cellphone did not violate his Fourth Amendment rights."  Id. at 1276.

In this case, Officer Coddington's search of defendant's cellphone in no way runs afoul of the Fourth Amendment.  Defendant's agreed upon parole conditions not only required him to submit to a search of his person and/or property (including electronic devices) under his control without cause, they also required defendant to provide the password for any electronic device in his vicinity. (Exhibit D to Defendant's Motion to Suppress.)  When asked for his cellphone, defendant told officer Coddington where his cellphone was

located and ultimately complied with his parole terms when he used his fingerprint to give Officer Coddington access to the phone. Because defendant was a parolee subject to search terms, he "had a reduced expectation of privacy" and "the search of defendant's cellphone did not violate his Fourth Amendment rights. Johnson, 875 F.3d at 1276.

Defendant, citing Samson, argues Officer Coddington's search of defendant's cellphone violates the Fourth Amendment because it was arbitrary, capricious, or harassing. In Samson, the United States Supreme Court found the following suspicionless detention and search of a parolee was not arbitrary, capricious, or harassing: an officer observed a known parolee lawfully walking down the street with a woman and child; the officer incorrectly believed the parolee had an outstanding warrant; the officer stopped the parolee and was told by the parolee he did not have an outstanding warrant and was in good standing; the officer confirmed through his dispatcher that the parolee did not have an outstanding warrant; and then based solely on the parolees status as a parolee, the officer searched the parolee. Samson, 547 U.S. at 848.

In this case, the events leading to the parole search of defendant are much further removed from being arbitrary, capricious, or harassing than the underlying facts in Samson. Officers lawfully detained defendant who was engaged in a traffic violation. When defendant was contacted by Officer Coddington, his physical reaction to law enforcement was suspicious, and was consistent with a guilty conscience. Before conducting a parole search, Officer Coddington confirmed defendant was on parole for a serious and violent offense. Thus, based on the totality of the circumstances, including that it

is well known to officers that parolees are more likely than others to be engaged in, or attempting to cover up criminal activity, Officer Coddington's searched defendant's vehicle and cellphone. When compared to the facts in Samson, it is clear Officer Coddington's search was not arbitrary, capricious, or harassing.  The search did not violate defendant's diminished Fourth Amendment rights.

**B.    Officer Coddington's Search of Defendant's Cellphone did not Violate the Fifth Amendment.**

The Fifth Amendment is intended to protect a person "from having to reveal, directly or indirectly, knowledge of facts relating him to the offense or from having to share his thoughts and beliefs with the Government."  Doe v. United States, 487 U.S. 201, 213 (1988).  The Supreme Court has thus held that "[t]he word 'witness' in the constitutional text limits the relevant category of compelled incriminating communications to those that are 'testimonial' in character."  United States v. Hubbell, 530 U.S. 27, 34 (2000).  Therefore, "[t]o qualify for the Fifth Amendment privilege, a communication must be: (1) testimonial, (2) incriminating, and (3) compelled."  Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County, 542 U.S. 177 at 189 (2004).

In this case, the question is whether the use of defendant's fingerprint to access the contents of his cellphone violates the Fifth Amendment.  Factually, the government rejects defendant's assertion that an officer "grabbed" his thumb to unlock the phone. (Exhibit B to Defendant's Motion to Suppress.)  Officer Coddington placed defendant's phone in defendant's hand, and in compliance with his agreed upon terms of parole, defendant provided the key to access

7

the phone, his thumb print.  (Coddington Decl. ¶ 11.)  Further, Officer Coddington did not threaten to arrest defendant for a parole violation if he did not provide access to the phone.  (Id. ¶ 12.)  Thus, the only compelled aspect of the interaction is that defendant was confronted with the terms of his parole, and he complied.

Not only was defendant's act of providing his thumb print not compelled, it was in no way a testimonial statement.  The Fifth Amendment privilege "offers no protection against compulsion to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture . . . because none of these activities becomes testimonial within the scope of the privilege . . .."  United States v. Wade, 388 U.S. 218, 223 (1967). Further, "the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material."  Holt v. United States, 218 U.S. 245, 217-218 (1910).  Finally, the United States Supreme Court has consistently held that certain acts, though incriminating, are not protected by the Fifth Amendment privilege against self-incrimination and can be compelled by the government. For example, a suspect may be compelled to furnish a blood sample, Schmerber v. California, 384 U.S. 757 (1966); to provide a handwriting exemplar, Gilbert v. California, 388 U.S. 263 (1967); to provide a voice exemplar, United States v. Dionisio, 410 U.S. 1 (1973); to stand in a lineup, Wade, 388 U.S. 218; to wear particular clothing, Holt, 218 U. S. 245; and to sign consent documents allowing a bank to disclose bank records that a defendant may know contain

information incriminating the defendant.  Doe v. United States, 487 U.S. 201 (1988).

Thus, while neither United States Supreme Court, nor any of the United States Courts of Appeal, have directly addressed the question of whether the use of a fingerprint to open a cellphone is testimonial under the Fifth Amendment, other federal district courts and state courts across the country have addressed the issue. See In Matter of Search of [Redacted] Washington, 2018 WL 3155596 (D.D.C. 2018) (Search warrant authorizing compelled use of biometric features to unlock devices did not violate Fourth or Fifth Amendments.); In re Search Warrant Application for [Redacted Text], 279 F.Supp.3d 800, 804 (N.D. Ill. 2017) ("The government chooses the finger to apply to the sensor, and thus obtains the physical characteristic—all without the need for the person to put any thought at all into the seizure."); Minnesota v. Diamond, 905 N.W.2d 870, 876 (Minn. 2018) ("[The defendant's] act of providing a fingerprint to the police was not testimonial because the act did not reveal the contents of [his] mind."); Virginia v. Baust, 89 Va. Cir. 267, 2014 WL 10355635, at *4 (Va. Cir. Ct. Oct. 28, 2014) ("The fingerprint ... does not require the witness to divulge anything through his mental processes."); but see In the Matter of the Search of a Residence in Oakland, California, 2019 WL 176937 (N.D. Cal. 2019) (holding that requiring a suspect to biometrically unlock a device would violate the Fifth Amendment).

**C.    Defendant has not Established Standing to Challenge the Search of the Residence on El Cortez Way**

The person challenging the fruits of a search must have a legitimate expectation of privacy in the area searched.  United

States v. Salvucci, 448 U.S. 83 (1980).  A defendant must prove he possesses standing.  Rawlings v. Kentucky, 448 U.S. 98, 104 (1980). There is no "automatic standing" rule. Salvucci, 448 U.S. at 85 ("Today we hold that defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated. The automatic standing rule of Jones v. United States, [362 U.S. 257 (1960)] is therefore overruled."). See also United States v. Padilla, 508 U.S. 77 (1993) (defendant charged with conspiracy does not have automatic standing to challenge evidence simply because he is a member of the conspiracy).  A prosecutor may simultaneously argue, without legal contradiction, that a defendant criminally possessed a seized item, but lacks standing to contest its seizure.  Salvucci, 448 U.S. at 88-89 (government "may, with legal consistency and legitimacy, assert that a defendant charged with possession of a seized item did not have a privacy interest violated in the course of the search and seizure.")

Here, defendant has presented no evidence he had a protected Fourth Amendment expectation of privacy in the residence searched on El Cortez Way.  He has failed to file the required declaration. Local Criminal Rule 12-1.1.  Thus, he has not established standing to challenge the search and seek suppression of the evidence found.

> **D.    Even if Defendant has Standing to Challenge the Search of the Residence on El Cortez Way, the Officer's Search did not Violate the Fourth Amendment**

Searches not performed pursuant to a warrant are presumed to be unreasonable.  Kentucky v. King, 563 U.S. 452 (2011).  However, a search pursuant to a warrant should be presumed to be valid as there

is a presumption of validity with respect to the affidavit supporting the search warrant.  Franks v. Delaware, 438 U.S. 154, 171 (1978).

Here, defendant objects to what he characterizes as a "parole search," and Officer Coddington described as a "security sweep" of the residence on El Cortez Way prior to the officers obtaining a warrant, and contends that this search, combined with information obtained from defendant's cellphone, amounts to illegally obtained evidence that cannot be used to support a valid search warrant. (Def. Mtn. at pp. 11-14; (Exhibit A to Defendant's Motion to Suppress, p.2.)  Defendant's motion should be denied because no search was actually performed prior to the officers obtaining a warrant and the warrant was supported by probable cause, whether or not one considers the observations that officers made while sweeping and securing the premises.

1.    The Search Warrant Was Supported by Probable Cause

Probable cause only requires a probability, not certainty nor even a prima facia showing nor preponderance of the evidence, that a location will contain evidence of criminal activity.  Hill v. California, 401 U.S. 797, 804 (1971); Illinois v. Gates, 462 U.S. 213 (1983); United States v. Gourde, 440 F.3d 1065 (9th Cir. 2006).  The affidavit in support of this warrant contained sufficient information to establish probable cause that, as outlined above, was not illegally obtained.  Officer Coddington found on defendant's cellphone a video taken that very morning showing a large amount of cash, a money counter, and "several bags of blue pills (suspected to be fentanyl)" inside the residence on El Cortez way. (Exhibit E to Defendant's Motion to Suppress, p.5.)  Another video showed the outside of the residence, further identifying the location. (Id.)  In

11

that same video, defendant is heard saying "life is good in Palm Desert" and "I got the Beamer out front," further linking the defendant to the residence.  (Id.)  Officers located a set of keys in defendant's pocket that opened the door to the residence and the BMW parked in front of the residence.  This evidence included in the warrant creates a strong probability that the evidence of drug trafficking observed in the videos would be located inside the residence on El Cortez Way.

### 2.   The Officers Were Justified in Sweeping or Freezing the Premises to Secure it Pending the Search Warrant

The securing of a premises while officers obtain a search warrant for those premises is a Fourth Amendment seizure.  United States v. Lindsey, 877 F.2d 777, 780 (9th Cir. 1989).[1]  But when officers have probable cause to believe that contraband is contained in a particular residence and have a reasonable belief that if the residence is not immediately secured the evidence will be destroyed, officers may enter the residence to secure it pending the issuance of a search warrant.  United States v. Alaimalo, 313 F.3d 1188, 1192-93 (9th Cir. 2002); Dixon v. Wallowa County, 336 F.3d 1013 (9th Cir. 2003).  The relevant test for determining the reasonableness of a seizure of a residence balances the privacy-related and law enforcement-related concerns involved using four factors: (1) whether the police had probable cause to believe that the premises contained evidence of a crime or contraband; (2) whether the police had good reason to fear that, unless restrained, an occupant would destroy the

---

[1] Even though such a seizure involves the Fourth Amendment, different issues are implicated by a seizure as opposed to a search, because a seizure affects only a possessory interest, not a privacy interest, and a seizure is generally, as it was here, less intrusive than a search.  Segura v. United States, 468 U.S. 796, 806 (1984).

evidence or contraband before the police could return with a warrant; (3) whether the police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy; and (4) whether the time period was no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant. Illinois v. McArthur, 531 U.S. 326, 331-32 (2001). In assessing the validity of a search, an objective standard is applied so that "law enforcement's subjective motivations are irrelevant" in determining whether an exigency exists. United States v. Snipe, 515 F.3d 947, 952 (9th Cir. 2008).

Here, before arriving, officers had probable cause that the premises contained several bags of blue pills suspected to be fentanyl, a substance that is disposable. Further, Officers did not know if there was anyone else in the residence who may come out of the residence and harm officers. Officers conducted a quick and limited sweep of the residence to determine if anyone was present.

### 3. The Search Was also Justified Under Defendant's Agreed Upon Parole Terms

When he agreed to his parole terms, defendant agreed that he, his residence, and "any property under his control are subject to search or seizure by any . . . peace officer, at any time of the day or night, with or without a search warrant, with or without cause." (Exhibit D to Defendant's Motion to Suppress, p.1.) Officers knew from the videos and information obtained from defendant's cellphone, along with the keys he possessed in his pockets that defendant had control of the residence on El Cortez Way. Thus, officers had probable cause to believe that the residence was property under

13

defendant's control and could be searched pursuant to his parole search condition.

Taking all these facts into account, the officers also met Grandberry's probable cause standard to believe the residence was defendant's.  In United States v. Hopkins, 830 Fed. Appx. 220 (9th Cir. 2020), the Ninth Circuit held that probable cause existed to believe a residence was the defendant's despite the fact that he was known to live elsewhere, his parole address was for a different address, and he had never been seen by law enforcement at the address where the search took place.  Further, when officers knocked at the door of the apartment, the female tenant who answered the door denied defendant lived at that apartment.  Supporting the finding of probable cause were simply the fact that a child who purported to be the defendant's nephew told officers the defendant had moved down the street, officers saw defendant's car at the new address, and the vehicle was registered to the new address.  Id.  In contrast here, in addition to the evidence taken from defendant's cellphone, linking defendant to the premises, defendant possessed the keys to the residence and the BMW parked out front.

**E.   Even if the Entry and Sweep of the Residence Was not Justified by a Valid Exception to the Warrant Requirement, the Warrant is Still Supported by Probable Cause**

Even if the Court determines that there is no exception to the warrant requirement that justifies the officer's brief sweep of the residence prior to obtaining a warrant, the warrant is still valid because it contains information developed prior to and completely independent of the sweep.  Segura, 468 U.S. 796.  When observations made during an illegal entry are used in the warrant affidavit, those portions may be excised from the affidavit and the remainder then

14

retested for the existence of probable cause.  If the warrant is still supported by probable cause, the search will be upheld. United States v. Nora, 765 F.3d 1049, 1058 (9th Cir. 2014).

Here, no additional information was obtained during the sweep and included in the warrant affidavit to support a finding of probable cause.  Thus, "the warrant for the second search was not invalidated by the illegality of the first search, because none of the information relied on by the magistrate in issuing the warrant came from the illegal entry."  United States v. Merriweather, 777 F.2d 503, 506 (9th Cir. 1985).

> **F.    Even if the Search Warrant Lacked Probable Cause, the Officers Relied on it in Good Faith**

Evidence seized pursuant to a search warrant is not to be suppressed even if the warrant was defective so long as the officers acted in reasonable and objective good faith in relying upon the warrant and serving it.  United States v. Leon, 468 U.S. 897 (1984). A warrant issued by a judge normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search. United States v. Ross, 456 U.S. 798 (1982).  There are four narrowly drawn exceptions to this rule: (1) where the officer includes false statements; (2) the case of a magistrate who wholly abandons his impartial judicial role; (3) where the affidavit is so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; and (4) where the warrant is so facially defective as not to particularize the place to be searched or the things to be seized.  United States v. Crews, 502 F.3d 1130, 1136 (9th Cir. 2007).

15

Defendant has not argued that any of these exceptions apply, nor could he.  Defendant has not alleged that the affiant made any false statement, he has not alleged that Judge White abandoned his independent role, and he has not argued that the warrant is facially defective — it sufficiently describes the premises to be searched and the items to be seized, and it faithfully described the events leading to the officers seeking the warrant.

Even if this were a close case as to probable cause, the Court should accord a preference to the warrant and the decision of the judge issuing the warrant and the general preference for search warrants.  United States v. Johnson, 913 F.3d 793 (9th Cir. 2019).  This consideration is particularly salient here.  The agents could have gone ahead with a parole search, which would have been clearly valid under California law,[2] that may have presented a closer question than the search they ultimately conducted.  But they did not.  Instead, they obtained a warrant.  To the extent that it is a close call whether or not the warrant was supported by probable cause, the preference for warrants requires that this court afford the agents the benefit of the doubt and uphold their search based on a warrant.

The exclusionary rule is "restricted to those situations in which its remedial purpose is effectively advanced."  Illinois v. Krull, 480 U.S. 340, 347 (1987).  Suppressing evidence in this case, where investigators in a fluid situation decided to freeze a location

---

[2] See People v. Downey, 198 Cal. App. 4th 652 (2011) (rejecting as contrary to California law the rule applied in Grandberry that officers conducting a parole search must have probable cause to believe the parolee resides at the residence).

16

and obtain the warrant, would not advance the remedial purpose of the exclusionary rule.

### G. Even if Officer Henson's Questioning of Defendant Was in Violation of <u>Miranda</u>, the Evidence Derived from Defendant's Statement is not Fruit of the Poisonous Tree

When a police officer obtains a statement in violation of <u>Miranda</u>, and that statement leads to additional evidence, the derivative evidence is generally not excluded by the fruit-of-the-poisonous-tree doctrine. <u>United States v. Patane</u>, 542 U.S. 630, 644 (2004); <u>United States v. Gonzalez-Sandoval</u>, 894 F.2d 1043, 1048 (9th Cir. 1990) ("When there is no evidence of coercion or a denial of due process in elicitation of the statements, the object of the fifth amendment exclusionary rule -- assuring trustworthiness of evidence introduced at trial -- is not served by barring admission of the derivatively obtained evidence or statements.")

The only exception to this rule is when a defendant's statements are involuntary. Involuntary statements are "extracted by any sorts of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." <u>Beaty v. Schriro</u>, 509 F.3d 994, 999 (9th Cir. 2007) (internal citation and quotation marks omitted). "The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." <u>United States v. Leon Guerrero</u>, 847 F.2d 1363, 1366 (9th Cir. 1988).

Here, defendant's interview statements were neither involuntary nor coerced. There is no evidence defendant suffers from a mental disease, thus giving officers some psychological advantage. There is

no evidence defendant was threatened, or that any promises were made to defendant.  There is no evidence of physical coercion or threats. Finally, the length of the interview is incredibly short, approximately 30 seconds and is captured on video.  (Exhibit C to Defendant's Motion to suppress.)  Because defendant's statement was voluntary, evidence derived from his statement should not be suppressed.

**IV.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion to Suppress Evidence.

18

<u>DECLARATION OF CHRISTIAN CODDINGTON</u>

I, CHRISTIAN CODDINGTON, declare as follows:

1.    I am a California Peace Officer with the California Highway Patrol (CHP).  I have been employed by the CHP since 2017.  I am currently assigned to the Coachella Valley Violent Crime Task Force and have been so assigned since 2021.

2.    I make this declaration in support of the opposition to the Motion to Suppress Evidence filed by defendant Jeremy Travis Payne ("PAYNE").  I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

3.    I authored Incident Report GE213070002 that defendant PAYNE attached as Exhibit A to his Motion to Suppress in this case.  I have reviewed defense Exhibit A, and it is a true and accurate copy of Incident Report GE213070002.

4.    Incident Report GE213070002 includes a summary of my interaction with PAYNE on November 3, 2021, at approximately 11:45 a.m., while I was working uniformed patrol with my partner, Officer Garcia.

5.    As noted in more detail in the report, my partner and I conducted a traffic stop of PAYNE, discovered he was on parole with search terms, and then conducted a parole search of his vehicle.

6.    Upon completion of the search of his vehicle I asked PAYNE if he had a cellphone.  I was aware, as outlined in Exhibit D of his motion, PAYNE's parole terms included a requirement that PAYNE "shall surrender any digital/electronic device and provide a pass key/code to unlock the device to any law enforcement officer for inspection…"

7.    PAYNE said his phone was in the driver's door panel and was green in color.  I then located the cellphone PAYNE described in the location PAYNE described.

8.    I retrieved the cellphone and asked PAYNE to provide the password.  PAYNE immediately stated the cellphone was not his and he did not have the password.

9.    I reminded PAYNE that his parole terms allowed a law enforcement officers to search his cellphone and that the terms required PAYNE to provide access.

10.    PAYNE then reluctantly used his right thumb print to unlock the cellphone and allow me to access its contents.  By reluctantly I mean with a defeated expression.  I interpreted his expression as if PAYNE acknowledge he knew the cellphone belonged to him and he was required to provide access.

11.    I did not have to use any physical force to place PAYNE's thumb on the phone.  I placed the bottom portion of the phone in PAYNE's hand and PAYNE placed his thumb on the phone to unlock the phone.

12.    I did not tell PAYNE I would arrest him for a parole violation if he did not provide me with a password or fingerprint, to access the cellphone.

13.    After viewing the evidence found on PAYNE'S cellphone, as described in my report, I, along with other officers, went to the residence on El Cortez Way.  Once I confirmed the keys PAYNE possessed in his pocket opened the front door to the residence and the BMW parked in front of the residence, I decided to do a security sweep of the residence and freeze the residence while a search warrant was obtained.

2

14.   I conducted a security sweep of the residence to make sure there was no one inside the residence who could possibly come out of the residence and harm myself or other officers outside the residence.

15.   I have reviewed Exhibit C to defendant's Motion to Suppress.   Exhibit C is body-worn camera video recorded by Officer Henson.

16.   Officer Henson assisted me with the investigation and ultimate arrest of PAYNE in this case.

17.   The video depicted in Exhibit C was captured shortly after I and other officers had completed a security sweep of the residence on El Cortez Way in Palm Desert, California.

18.   I was sitting in the front of my police vehicle, beginning to write a search warrant for the residence on El Cortez Way.

19.   I asked Officer Henson to contact PAYNE, who was handcuffed and sitting in the back of a nearby police vehicle, and obtain access to PAYNE's cellphone for a second time.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Riverside, California, on May 9, 2022.

_____
CHRISTIAN CODDINGTON

3